UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

IN RE:

| | |
|---|---|
| ROLAND GARRISON and<br>PATRICIA A. ASHBURN-GARRISON, | CASE NO.: 25-31187-KKS<br>CHAPTER 7 |

Debtors.
_________________________________/

**DEBTORS' MOTION TO APPROVE MEDIATED COMPROMISE WITH SHS CONTRACTING, LLC, PURSUANT TO BANKRUPTCY RULE 9019**

**NOTICE OF OPPORTUNITY TO OBJECT AND REQUEST FOR HEARING**

Pursuant to Local Rule 2002-2, the Court will consider the relief requested in this paper without further notice or hearing unless a party in interest files a response within twenty-one (21) days from the date set forth on the proof of service plus an additional three days for service if any party was served by U.S. Mail, or such other period as may be specified in Fed. R. Bankr. P. 9006(f).

If you object to the relief requested in this paper, you must file an objection or response with the Clerk of Court or by mail at 110 E. Park Avenue, Suite 100, Tallahassee, Florida 32301, and serve a copy on the movants' attorney, Jodi Dubose, at 440 Bayfront Parkway, Pensacola, FL 32502, and any other appropriate person within the time allowed.

If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, will proceed to consider the paper without further notice or hearing, and may grant or deny the relief requested.

The Debtors, **ROLAND GARRISON** and **PATRICIA A. ASHBURN-GARRISON** (the "**Debtors**"), by and through their undersigned counsel, move the

Court for entry of an order approving their mediated compromise and settlement (the "**Settlement**") with SHS Contracting, LLC ("**SHS**"), pursuant to Section 105 of the Bankruptcy Code, Bankruptcy Rule 9019, and Local Rule 9019-1.

In support of their motion (the "**Motion**"), the Debtors state as follows:

## JURISDICTION

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested are 11 U.S.C. § 105(a) and Bankruptcy Rule 9019.

## GENERAL BACKGROUND

4. SHS was contracted by the Debtors to build their home, which is located in Walton County, Florida, on real property more particularly described as follows:

> Street Address: 3020 Brown Road, DeFuniak Springs, Florida 32433
>
> Parcel Identification Number: 11-4N-20-29000-002-0060
>
> Legal Description:
>
> That part of the NW 1/4 of the NE 1/4 of Section 11, Township 4 North, Range 20 West, Walton County, Florida, lying East of Brown Road.

(hereafter, the "**Property**").

5. Following a dispute between the parties concerning construction of the home, SHS recorded an Claim of Lien against the Property on July 18, 2024, in Official Records Book 3330, Page 4677, of the Public Records of Walton County, Florida (the "**Original Claim of Lien**").

6. SHS thereafter recorded an Amended Claim of Lien against the Property on August 30, 2024, in Official Records Book 3334, Page 3765, of the Public Records of Walton County, Florida (the "**Amended Claim of Lien**").

7. On January 10, 2025, SHS filed a civil action against the Debtors in the Circuit Court for the First Judicial Circuit, in and for Walton County, Florida, under case number is 2025-CA-000015 (the "**Walton County Action**"). SHS filed the Walton County Action within the time asserted in the pleadings for enforcement of the Amended Claim of Lien following the Notice of Contest of Lien referenced in the Complaint.

8. In connection with the Walton County Action, SHS recorded a Notice of *Lis Pendens* concerning the Property in the Public Records of Walton County, Florida, as Instrument No. 20250001197, Official Records Book 3347, Page 422, recorded January 13, 2025, at 9:16 a.m. (the "**Lis Pendens**").

9. The Debtors denied most of the allegations in Walton County Action and asserted counterclaims against SHS related to alleged construction defects.

10. On November 20, 2025 (the "**Petition Date**"), the Debtors filed their

voluntary petition for relief under Chapter 7 of 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**"), creating the instant bankruptcy case (the "**Bankruptcy Case**"). The Debtors scheduled the claims asserted by SHS as disputed and unsecured. [Doc. No. 15]

11. On February 19, 2026, SHS filed a motion for relief from stay to liquidate its Claim of Lien. [Doc. No. 47] On the agreement of the parties, the Court ultimately entered an order lifting the automatic stay to allow the parties to mediate the Claim of Lien and all causes in the Walton County Action that may give rise to an objection to dischargeability of debt. [Doc. No. 72]

12. On or about June 23, 2026, the parties participated in mediation (the "**Mediation**"), resulting in an agreement to settle their claims on the terms set forth herein below.

## THE SETTLEMENT

13. The Debtors reached a settlement with SHS that includes the following material terms:

a. SHS shall have an allowed claim against the Debtors in the Bankruptcy Case in the total amount of two hundred forty thousand eight hundred six dollars and seventy-eight cents ($240,806.78) (the "**SHS Allowed Claim**"), in full and complete settlement of any and all claims held by SHS against the Debtors as of the date of the order granting this Motion, whether asserted or unasserted, liquidated or unliquidated, and specifically including the claims included in the Walton County Action.

b. The SHS Allowed Claim shall be partially secured in the amount of $150,000.00 (the "**SHS Secured Claim**") and partially unsecured in the amount of $90,806.78 (the "**SHS Unsecured Claim**").

c. Upon entry of an order approving this Motion and the Settlement Terms set forth herein by the Bankruptcy Court (the "**Settlement Order**" and its date of entry, the "**Settlement Effective Date**"), the SHS Secured Claim shall bear interest at zero percent (0%) per annum for a period of five (5) years.

d. Beginning on the fifth anniversary of the Settlement Effective Date and continuing until maturity, payment, foreclosure, or satisfaction of the SHS Secured Claim, any unpaid principal balance of the SHS Secured Claim shall accrue simple, non-compounding interest at the rate of three percent (3%) per annum. Unless otherwise agreed in writing by the parties, interest shall be calculated on the unpaid principal balance of the SHS Secured Claim only and shall be due at maturity, payoff, foreclosure, sale, transfer, or other event requiring payment of said Claim. There shall be no early payment penalty.

e. The SHS Secured Claim may not be foreclosed until one of the following conditions is met: (i) both of the Debtors are deceased; or (ii) fifteen (15) years elapses following the Settlement Effective Date. Unless earlier matured, paid, satisfied, or otherwise resolved under these Settlement Terms, the SHS Secured Claim, together with all accrued interest then due, shall become fully due and payable on the fifteenth anniversary of the Effective Date or, if such event occurs sooner, upon any of the following events: (a) any voluntary sale of the Property; (b) any voluntary transfer of title to the Property, whether by deed, conveyance, assignment, trust transfer, entity transfer, or other instrument or transaction affecting title; (c) any involuntary transfer of title to the Property; (d) foreclosure of the Property by the prior mortgage holder; or (e) foreclosure of the Property by any future mortgage holder by assignment, judgment lienholder, construction lienor, other lienholder, or by eminent domain or tax deed sale. No transfer, conveyance, or foreclosure by a subordinate lien holder, title change, or other disposition of the Property shall release the SHS Lien or the SHS Secured Claim unless SHS is paid in full on the SHS Secured Claim or unless SHS executes and records a written satisfaction, release, or other instrument expressly releasing its SHS Lien rights. So long as the SHS Secured Claim has not been fully paid, then SHS shall have the right to participate in excess proceeds according to the priority of its Lien in the event of a foreclosure by a superior lien holder.

f. The Debtors must keep the Property insured from casualty for the full value thereof until the SHS Secured Claim is satisfied in full, and in the event of an insured loss of the Property, the SHS Lien shall attach to such proceeds in the same priority as it attaches to the Property under the Settlement Terms.

g. Upon entry of the Settlement Order and as of the Settlement Effective Date, any and all claims held by SHS against the Debtors, or by the Debtors against SHS, whether asserted or unasserted, liquidated or unliquidated, and specifically including the claims included in the Walton County Action, shall be forever released and replaced with the specific obligations and conditions set forth in the Settlement Order. The parties shall each bear their own attorneys fees and costs related to the Walton County Action and the Bankruptcy Case. However, in the event a foreclosure of the SHS Lien eventually occurs under the Settlement Terms, the prevailing party shall be entitled to recover their reasonable attorneys fees and costs incurred as a result of the foreclosure proceedings only.

h. The Debtors and SHS shall not publicly disparage or degrade one another other, or publicly discuss their prior interactions with one another, following entry of the Settlement Order. The intention of this paragraph is a "walk away" by the parties, one from another, with no future interaction between them except as specifically contemplated by the Settlement Order.

i. SHS may file a copy of the Settlement Order in the Walton County Action as evidence of disposition of the claim(s) asserted therein by final judgment and to facilitate the closing of such Case. Additionally, the Settlement Order may be recorded by SHS in the Public Records of Walton County, Florida, to provide record notice of the reformation, continuation, amount, terms, maturity, enforceability, and priority of the SHS Lien against the Property.

j. SHS will not pursue any cause of action under 11 U.S.C. § 523 against the Debtors in the Bankruptcy Case and shall allow their extended deadline to assert any such claim to pass without further extension except as specifically set forth herein. In the event that this Settlement is not approved in full by the Bankruptcy Court, the Debtors and SHS agree that SHS shall have fourteen (14) days from entry of any order to initiate a cause of action under 11 U.S.C. § 523.

k. SHS will not to interfere in any way with entry of the Debtors' discharge in the Bankruptcy Case.

l. Upon satisfaction of the SHS Secured Claim, SHS shall execute and record an appropriate satisfaction and/or release of the SHS Lien in the Public Records of Walton County, Florida, in accordance with Florida law.

(collectively, the "**Settlement Terms**").

14. The Settlement also includes and/or requires that the Parties agree to, and the Bankruptcy Court confirms, the following applicable conditions:

a. As a result of the Debtors' bankruptcy filing, the Bankruptcy Court has jurisdiction over SHS's claims against the Debtors, including the claims included in the Walton County Action.

b. The Debtors are not required to make regular, recurring payments on the SHS Secured Claim under the Settlement Terms.

c. The SHS Secured Claim arises from the Original Claim of Lien against the Debtors' homestead property first filed by SHS on July 18, 2024 (the "**SHS Lien**"), as amended by the Amended Claim of Lien dated August 30, 2024, and shall relate back to July 18, 2024 (the "**SHS Lien Effective Date**"), in accordance with Florida law.

d. The SHS Secured Claim arises from an asserted construction lien and shall attach to the Property, which is the Debtor's homestead, in accordance with Florida law.

e. The Bankruptcy Court may reform the SHS Lien to secure the specific indebtedness and obligations set forth in this Motion, with lien priority relating back to and effective as of the SHS Lien Effective Date. The purpose and effect of the reformation is to conform the lien rights of record to the parties' settlement and to preserve SHS's lien rights and priority, not to extinguish, release, merge, or impair SHS's lien rights.

f. There exists a principal mortgage recorded before the recording of the Original Claim of Lien in favor of Capital City Home Loans, LLC. The Settlement Order will not impair, alter, avoid, subordinate, or otherwise affect the validity, enforceability, or priority of that prior-recorded mortgage.

g. The SHS Lien is superior in dignity and priority to all liens, claims, encumbrances, transfers, interests, or clouds arising, recorded, or attaching after the SHS Lien Effective Date, excepting only those valid liens or encumbrances recorded prior to the SHS Lien Effective Date, which includes, but is not necessarily limited to, the prior recorded principal mortgage referenced above.

h. The Amended Claim of Lien, the *Lis Pendens*, and the Settlement Order shall be construed together as a continuous record chain giving notice of Plaintiff's lien rights, the pendency of this action, the reformation of SHS's lien, the Allowed SHS Claim, and the lien priority established herein.

i. Because the SHS Lien is reformed as provided herein, the same shall no longer be subject to the statutory one-year limitation period applicable to construction claims of lien and instead shall be subject the terms of the Settlement Order and any limitations periods as may apply to a recorded mortgage or recorded final judgment. No documentary stamps or intangible taxes are deemed due or incurred by the stipulations and agreements memorialized and affirmed by the Settlement Order.

j. The SHS Lien, as amended and as reformed by the Settlement Order, shall continue as a valid, subsisting, enforceable lien securing the SHS Secured Claim against the Property until paid, released, satisfied, foreclosed, or otherwise resolved according to the Settlement Order and applicable law.

## RELIEF REQUESTED

15. The Debtor requests entry of an order pursuant to Bankruptcy Rule 9019 in substantially the same form as Exhibit "A" hereto, which (i) approves the Settlement Terms set forth in paragraph 13 and the additional conditions set forth in paragraph 14 herein above, and (ii) authorizes the parties to take all steps necessary to effectuate the Settlement Terms, including resolution of the Walton County Action consistent herewith.

## **Basis for Relief and Memorandum of Law**

16. It is generally recognized that the law favors compromise of disputes over litigation. *E.g., In re Bicoastal Corp.*, 164 B.R. 1009, 1016 (Bankr. M.D. Fla. 1993) (Paskay, C.J.). Some courts have held that a proposed settlement should be approved unless it yields less than the lowest amount that the litigation could reasonably produce. *In re Holywell Corp.*, 93 B.R. 291, 294 (Bankr. S.D. Fla. 1988) (Weaver, J.).

17. In *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544 (11th Cir. 1990), *cert. denied* 498 U.S. 959, (1990), the Eleventh Circuit enunciated certain factors which must be considered in determining whether to approve a compromise. These factors include the following:

> a. The probability of success in the litigation;
>
> b. The difficulties, if any, to be encountered in the matter of collection;
>
> c. The complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending it; and
>
> d. The paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Id*. Bankruptcy courts consider the *Justice Oaks* factors to "determine the fairness, reasonableness[,] and adequacy of a proposed settlement." *In re Gaddy*, 622 B.R.

440, 448–49 (Bankr. S.D. Ala. 2020), *aff'd sub nom. In re Gaddy*, 851 F. App'x 996 (11th Cir. 2021).

18. As discussed below, the Settlement Terms proposed herein satisfy the *Justice Oaks* factors and should be approved.

19. The Settlement resolves disputed issues between the Debtors and SHS, thereby enhancing the prospect for efficient resolution of the Bankruptcy Case.

20. The Settlement also provides for total resolution of the parties' disputes, results in satisfaction of creditor secured claims, and avoids the delay, uncertainty, risk, and costs attendant with further litigation between the parties.

21. The Settlement does not affect the payment or validity of any other creditors' claims, other than allowance of the SHS Unsecured Claim in the unsecured creditors' claim pool.

22. For these reasons, the Releases satisfy the *Justice Oaks* factors and should be approved.

WHEREFORE, the Debtors respectfully request that the Court enter an order: (a) granting this Motion; (b) approving the Settlement Terms set forth in paragraph 13 and the additional conditions set forth in paragraph 14 herein above, (c) authorizing the parties to take all steps necessary to effectuate the Settlement Terms, including resolution of the Walton County Action consistent with the Settlement Terms; and (d) granting such other and further relief as is just.

Submitted this 8th day of July, 2026.


*/s/ Jodi D. Dubose*
Jodi Daniel Dubose
AL Bar No. 6852-J42C
Stichter Riedel Blain & Postler, P.A.
440 Bayfront Parkway
Pensacola, Florida 32502
Phone: (850) 637-1836
Email: jdubose@srbp.com
*Attorneys for the Debtors*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing *Debtor's Motion to Approve Mediated Compromise with SHS Contracting, LLC, Pursuant to Bankruptcy Rule 9019* has been furnished on this 8th day of July, 2026, by either the Court's electronic noticing system or by U.S. mail to all creditors on the Court's mailing matrix, the United States Trustee, and the Chapter 7 Trustee.

*/s/ Jodi D. Dubose*
Jodi Daniel Dubose